Samuel P. Haines v. Commissioner.
Haines v. Commissioner
Docket No. 19495.
United States Tax Court
1949 Tax Ct. Memo LEXIS 83; 8 T.C.M. (CCH) 793; T.C.M. (RIA) 49216; September 1, 1949
*83 Petitioner, a manufacturer's agent, bought a 60-foot boat in 1942, paid expenses of its maintenance and use, and sold it in 1943. On the facts, held, expense of boat's operation and loss upon its sale are not ordinary and necessary business expenses and business loss. Claude A. Rochford, Esq., 445 N. Pennsylvania St., Indianapolis, Ind., for the petitioner. Lester M. Ponder, Esq., for the respondent. ARNOLD Memorandum Opinion ARNOLD, Judge: Respondent determined a deficiency in petitioner's income tax for 1943 of $1,411.36. The principal issue is whether a boat maintained by petitioner and sold at a loss was used in petitioner's trade or business. The parties stipulated that the amount claimed on petitioner's return for 1942 as medical expenses, $2,331.76, was so expended by petitioner in that year. [The Facts] Petitioner is an individual residing in Indianapolis, Indiana. He filed income tax returns for 1942 and 1943 with the collector of internal revenue at Indianapolis. He is engaged in business as a manufacturer's representative. In the taxable years he maintained offices in Indianapolis and in Washington, D.C. A. F. Green, petitioner's half-brother, *84 operated a boat business in Miami, Florida. Petitioner suggested to Green that he find a boat for petitioner's use. When petitioner was in Florida in January 1942, Green showed him a boat which could be bought cheaply and petitioner bought it on January 29, 1942, for $800. The boat was named the "Starling", was 60 feet in length and had sleeping quarters for five people. It was not a sea-going craft, but could be used in inland waters. Petitioner made expenditures for equipment, furnishings and bedding for the boat in 1942, and in 1942 and 1943 paid expenses of its maintenance and upkeep, including dockage rental and salary of a captain. He sold the boat and its equipment on April 3, 1943, for $1,000. Petitioner and his wife were in Miami in 1942 for two periods of about ten days each. They used the boat half a dozen times. Guests were with them on several of these occasions. Some of the guests were petitioner's clients or customers, or representatives thereof. Two of their guests were friends of the family who were employed in Washington, D.C., by the Treasury Department. Petitioner's father and mother, who resided in Indianapolis, used the boat twice in January and February *85 1943 while wintering in Florida. Use of the boat in 1943 was limited because of gasoline rationing. Petitioner extended invitations by letter or telephone to various friends and customers to make use of the boat when visiting Miami. Petitioner wrote Green under date of January 29, 1943, stating, in part: "I appreciate very much the offer of $1,000.00 which you say has been made and presume it might be a good idea to sell the boat, but I am trying now to arrange my work so that I will be in Florida possibly the latter part of this month, maybe around the 15th, and presume we can take it up then, * * *. "If you think this offer very important and the condition of the boat is such that possibly I had better accept it, please telephone me collect person to person, so that the call can be relayed to me wherever I am and I will discuss it with you. "With the purchase of the boat and the charges I have paid on it, along with the equipment, I have purchased, I have involved close to $3,000.00 and while we have had a lot of fun with it, I hate like the devil to take that kind of a licking on it, altho, after all it was just for fun and not an investment that we bought it." In his *86 return for 1942 petitioner claimed a deduction of $2,137.45 as "boat expense and upkeep". In his return for 1943 he claimed deductions of $312 as "boat expense and upkeep" and of $1,456.22 as loss on sale of assets. Respondent disallowed these deductions. [Opinion] Petitioner argues that respondent is barred by the statutory period of limitations on assessment from recomputing petitioner's tax for 1942 in determining his tax for 1943. This period was extended by waiver with respect to 1943 but not as to 1942. The issue here raised has been decided in favor of the respondent in , which is controlling on this point. The issue on the merits is whether petitioner's expenses in 1942 and 1943 in maintaining a boat at Miami are deductible as ordinary and necessary business expenses and whether his loss upon sale of the boat in 1943 is a business loss. Petitioner's argument is that in his business entertaining clients or customers or their agents is an important means of making sales; that he purchased the boat with a business motive and offered its use to prospective customers as a means of entertaining them; and that he entertained *87 some of them personally on the boat in 1942. The testimony in support of petitioner's contention is vague and unconvincing. Petitioner could not say who used the boat at his inviation or how often it was used. In 1942 he was at Miami twice, used the boat several times, but did not name the people he entertained or describe their business connections. Entertainment is generally a personal matter and its costs are personal expenses. If expenses of such a nature are to be accepted as business expenses it must be shown that the purpose of the expenditure was primarily business rather than social and that the taxpayer's business benefited or was intended to benefit thereby. . There is no such detailed evidence here as in , reversing B.T.A. Memorandum Opinion. Nor does the evidence provide us any basis for an allocation under . At least some of the people entertained in 1942 were friends who were Government employees and not business prospects. Petitioner's father and mother admittedly used the boat for pleasure alone. Upon the showing here *88 made we cannot find that the boat was used by petitioner for business purposes. We think petitioner expressed his true purpose in acquiring and using the boat when he said in his letter to Green in January 1943, "* * * we have had a lot of fun with it" and "after all, it was just for fun and not an investment that we bought it." We conclude that the expenses of its operation and maintenance were not ordinary and necessary expenses of petitioner's trade or business, and that the loss, if any, upon its sale was not incurred in petitioner's business or in any transaction entered into by petitioner for profit. Decision will be entered under Rule 50.